HOWARD, Circuit Judge
(dissenting in part).
I join in the lion’s share of the majority’s well-reasoned opinion. I write separately on one issue, however, because I do not agree that the district court abused its discretion in handling the juror misconduct issue. See supra Sec. II.B.
Although the majority cites our decision in United States v. Yeje-Cabrera, 430 F.3d 1 (1st Cir.2005), I calibrate differently the impact of that decision—which has a fact scenario remarkably similar to this one— on our consideration of this case. In YejeCabrera, a note from a juror during the course of trial (concerning the defendants’ failure to testify) raised the question of whether she had discussed the case with other jurors prior to deliberations, contrary to the court’s instructions. 430 F.3d at 10. After revealing the note to counsel, the court declined defense counsel’s suggestions that he interview the note-writing juror and the others individually to ascertain whether discussions had taken place. Id. at 10. Instead, the judge issued a curative instruction, reiterating the “no-discussion” rule, and asked the jury, as a group, whether any such discussions had taken place. No juror admitted as much in the group setting. Id. No action was taken against the juror at this time.
The same juror complained multiple times the next day about the course of trial, and was dismissed prior to that day’s proceedings. Id. at 10-11. The judge denied the defendant’s request to interview the remaining jurors individually, satisfied with their previous group answer and the fact that they could not have had additional contact with the rogue juror. Id. at 11.
On appeal, the defendant claimed that the group request was inadequate due to peer pressure, and that individual questioning should have occurred to determine if the jury had followed instructions. Id. We framed the question as follows: “Here the claim of taint is not about the juror herself, she was dismissed----The question is whether she tainted the others.” Id. at 11. That is the same question we *46 face here. We also said that while en masse questioning may conceivably discourage an honest answer, the court’s invitation to allow individuals to contact the court with issues sufficed to overcome any individual reluctance. Id. Significantly, we noted that even if the rogue juror had communicated her views on the defendants’ failure to testify, “there is no reason to think those jurors were dissuaded from following the instructions of the judge----” Id.
The trial court here followed a different path, but in my view achieved the same acceptable outcome as in Yeje-Cabrera. First, the fact that the rogue juror was essentially “turned in” by her fellow jurors suggests that the remainder of the jury took the instruction on outside research seriously from the beginning. Next, after the juror was dismissed, there was (unlike in Yeje-Cabrera) individual questioning in which the court reminded the jurors of their obligations not to do outside research. Additionally, during the individual, in-chambers voir dire, the trial court reminded each juror to contact the court via written note with any concerns. Finally, in addition to issuing a curative instruction reiterating the individual instructions, the court ordered the jury to re-start deliberations from the beginning with the addition of two new jurors. This was a stronger curative measure than took place in Yeje-Cabrera, where the jury simply resumed deliberations where it had left off.
While individual questioning as to taint may have been preferable—just as individual questioning in Yeje-Cabrera might have been preferable'—-the combination of the dismissal of the juror, the individual instructions, the re-instruction, and the recommencement of deliberations lead me to conclude that the trial court did not abuse its discretion. “This was a difficult situation and the trial judge acted well within the range of permissible options.” Yeje-Cabrera, 430 F.3d at 11.